UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CURTIS LEFLOURIA, ) | CASE NO. 1:17CV157 |
| ) | |
| Plaintiff, ) | JUDGE SARA LIOI |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, ) | OF MAGISTRATE JUDGE |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Curtis Leflouria ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Disability Insurance Benefits ("DIB").  ECF Dkt. #1.  In his brief on the merits, filed on May 25, 2017, Plaintiff asserts that the administrative law judge ("ALJ"): (1) issued a decision that is not supported by substantial evidence; and (2) failed to call a medical expert to testify or order a consultative examination.  ECF Dkt. #15.  Defendant filed a response brief on July 25, 2017. ECF Dkt. #18.  Plaintiff filed a reply brief on July 31, 2017.  ECF Dkt. #19.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

**I.    PROCEDURAL HISTORY**

On March 24, 2014, Plaintiff protectively filed an application for DIB.  ECF Dkt. #12 ("Tr.") at 139.[2]  The application was denied and Plaintiff requested a hearing.  *Id.* at 82, 86.  The hearing was held on September 16, 2015.  *Id.* at 32.  On October 6, 2015, the ALJ issued a

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system.  When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages.  Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

decision denying Plaintiff's claim. *Id.* at 15. Subsequently the Appeals Council denied Plaintiff's request for review. *Id.* at 3. Accordingly, the October 6, 2015, decision issued by the ALJ stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's October 6, 2015, decision on January 23, 2017. ECF Dkt. #1. On May 25, 2017, Plaintiff filed a brief on the merits. ECF Dkt. #15. Defendant filed a response brief on July 25, 2017. ECF Dkt. #18. Plaintiff filed a reply brief on July 31, 2017. ECF Dkt. #19.

## II.    RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A.    Medical Evidence

On April 25, 2005, Plaintiff was diagnosed with polysubstance dependency in remission and indicated that he was celebrating three years of sobriety from drugs and alcohol on this date. Tr. at 1130. In May 2005, Plaintiff was treated for his Hepatitis C and it was noted that his liver function remained stable. *Id.* at 1127. On July 6, 2005, it was noted that Plaintiff had a history of ulcerative colitis and that he reported he had been sober for four years. *Id.* at 1122.

In August 2005, Plaintiff reported increasing pain in his hips. Tr. at 1120. X-rays taken in September 2005 showed minimal arthritic change and evidence of osteoporosis. *Id.* at 508. A bone density study also performed in September 2005 showed no signs of osteoporosis. *Id.* at 507-508. Plaintiff received treatment for sore hips on October 11, 2005. *Id.* at 610. On examination, Plaintiff displayed good hip range of motion with mild soreness, good curvature and range of motion of his spine, and a normal gait. *Id.*

On October 19, 2006, Plaintiff sought treatment for a sore right hip after he slipped on some wires on the floor at work and landed on his right hip. Tr. at 231. Plaintiff stated that he also landed on his right wrist, but that his wrist and hand were not bothersome. *Id.* On examination, Plaintiff exhibited tenderness and swelling in his right hip, pain on rotation, and some pain on flexion of the hip. *Id.* X-rays of Plaintiff's right hip showed a "tiny" osteophyte that could have been "the earliest findings in degenerative hip disease." *Id.* at 232. On August 23, 2006, Plaintiff reported "level 10" pain at times in his right hip. *Id.* at 230. On examination,

Plaintiff had positive straight leg raises on his right and was assessed as having a right hip contusion with radiculopathy. *Id.*

Plaintiff was hospitalized for substance abuse treatment from March 30, 2007 through May 9, 2007. Tr. at 256, 259. During this time, Plaintiff reported that he was suicidal, and that he had lost everything and was thinking about hanging himself. *Id.* at 260. In June 2007, it was noted that Plaintiff's cocaine, alcohol, and marijuana dependence were in remission. *ID.* at 284.

X-rays of Plaintiff's hips taken on August 9, 2007 were normal, and x-rays of his right ankle showed calcaneal enthesopathy. *Id.* at 312, 505-506. Additional x-rays showed arthritic changes in the left acromioclavicular ("AC") joint. *Id.* at 312. The following day, Plaintiff sought treatment for left shoulder pain and reported a rotator cuff flare when he was lifting weights at a gym. *Id.* at 265. Plaintiff displayed a smooth, steady gait, localized left shoulder pain, full range of motion of the cervical spine, and normal hand strength. *Id.* at 265-66. Additionally, Plaintiff was able to raise his arm over his head with some discomfort. *Id.* at 266. That same day, Plaintiff had an appointment regarding his Hepatitis C and denied any abdominal pain, nausea, or vomiting. *Id.* at 812. In September 2007, Plaintiff displayed nearly full range of motion in his left shoulder and normal strength. *Id.* at 590. X-rays showed degenerative disc disease in the AC joint. *Id.* Plaintiff received an injection in his shoulder. *Id.* at 803.

On February 8, 2008, Plaintiff again complained of left shoulder pain. Tr. at 788. X-rays of the shoulder showed minimal degenerative changes in the AC joint. *Id.* at 501-502. That same day, Plaintiff sought treatment for blood in his stool due to ulcerative colitis. *Id.* at 791. On February 29, 2008, Plaintiff exhibited normal shoulder range of motion, normal strength, and no AC tenderness, and received another injection in his left shoulder. *Id.* at 782-83. Further, Plaintiff stated that he was able to perform his activities of daily living, but experienced some pain. *Id.* at 579. Plaintiff also reported that he was still passing blood at times, but his symptoms had improved, and denied any urinary or bowel problems. *Id.* at 776.

On March 3, 2008, Plaintiff reported that he was enrolled in school and was working towards a nursing degree. Tr. at 783. Plaintiff stated that he was maintaining A grades in nearly all of his classes, with a B in a single course. *Id.* Additionally, Plaintiff indicated that he was

brainstorming recreational activities for his church and wanted to contact Veterans Affairs ("VA") regarding fishing trips. *Id.*

In June 2008, Plaintiff complained of bilateral sacroiliac joint pain with intermittent buttock pain with no known injury. Tr. at 501. X-rays showed normal sacroiliac joints. *Id.* Additional x-rays of Plaintiff's lumbar spine showed multilevel degenerative disc disease. *Id.* at 500. It was noted that a small caliber bullet was "probably in the far left flank." *Id.* In July 2008, it was reported that Plaintiff was following through with his substance abuse groups and taking classes to help improve his life. *Id.* at 750.

Plaintiff reported back pain in May 2009 and was prescribed medication. Tr. at 735-36. On June 10, 2009, Plaintiff reported pain in his left heel and was assessed as having bursitis, abnormal gait, and plantarflexed metatarsals. *Id.* at 566-67. Later that month, Plaintiff complained of stiffness in his back in the mornings, but indicated that it resolved by the afternoon. *Id.* at 569. It was also noted that Plaintiff was seen previously for shoulder problems, which had been resolved. *Id.* at 726. Plaintiff had pain and tenderness in his right sacroiliac joint with full flexion of the lumbar spine, mild scoliosis, full straight leg raise tests, normal lower extremity strength, normal sensation, and minimal leg discrepancy. *Id.* at 569, 726. Based on this diagnosis, Plaintiff was given materials for a home exercise program. *Id.*

In August 2009, Plaintiff was issued orthotics that supported the arch in a subtailor joint neutral position and raised the heel. Tr. at 561-62. Plaintiff also received another injection in his left shoulder for the pain. *Id.* at 718-19. On October 27, 2009, Plaintiff underwent an examination of his spine in connection to VA disability benefits. *Id.* at 707. On examination, Plaintiff's pelvis was tilted to the right and he displayed an antalgic gait. *Id.* at 709-10. Plaintiff had muscle spasms in his back and lower extremity weakness in his left leg, but full motor strength in his extremities other than slightly reduced left hip and knee flexion. *Id.* at 711-12. It was stated that Plaintiff had leg length discrepancy and degenerative disc disease in his back, and that his back condition was secondary to his hip injury. *Id.* at 636, 717.

In February 2010, Plaintiff complained of continued pain in his lower back, left leg, and left hip, and was prescribed medications. Tr. at 699. Plaintiff stated that he experienced left

shoulder pain in March 2010 and received another injection. *Id.* at 693-94. On April 5, 2010, a CT of Plaintiff's lumbar spine showed moderate multilevel degenerative disc disease. *Id.* at 498-99. In July 2010, Plaintiff participated in physical therapy for lower back pain and displayed normal lower extremity strength, normal straight leg raise testing, and a posture that shifted to the left. *Id.* at 541-42. A home exercise plan was developed and Plaintiff was seen for additional physical therapy sessions through July 2010 and August 2010, which he tolerated well. *Id.* at 542-43, 663-74. Plaintiff reported improvement with the physical therapy sessions, but continued to report pain in his spine. *Id.* at 545, 665. On November 18, 2010, Plaintiff inquired about returning to an alcohol treatment program. Tr. at 649.

In December 2011, x-rays of Plaintiff's right knee showed osteoarthritis. Tr. at 454. On December 7, 2012, an ultrasound of Plaintiff's abdomen, including his liver, was unremarkable. *Id.* at 451-452. In February 2014, Plaintiff underwent a colonoscopy, which showed mild colitis. *Id.* at 446-47. On May 15, 2014, Shane Stackpoole, SDM, concluded that there was insufficient evidence to form an opinion as to Plaintiff's physical residual functional capacity ("RFC") prior to December 31, 2011, his date last insured. *Id.* at 75-76. Also on that date, a state agency psychological consultant concluded there was insufficient evidence regarding Plaintiff's mental impairments prior to his date last insured to form an opinion as to his mental condition. *Id.* at 76. On May 11, 2015, x-rays of Plaintiff's hips showed mild degenerative changes. *Id.* at 1155.

### B. Testimonial Evidence

The ALJ held a hearing on September 16, 2015, with Plaintiff, his attorney, and a vocational expert ("VE") present. Tr. at 32. On examination by the ALJ, Plaintiff testified that he graduated from high school and had taken three years of college courses. *Id.* at 37. Continuing, Plaintiff testified that he had last attempted to work four years prior to the hearing, and that the last time he held a full-time job was in 2006. *Id.* After a discussion off the record, Plaintiff's attorney asserted that Plaintiff's history of substance abuse was related to major depressive disorder, and that when he became depressed he turned to cocaine and alcohol. *Id.* at 44. Plaintiff's attorney also stated that Plaintiff would immediately seek help once he began using substances. *Id.*

When questioned by his attorney, Plaintiff testified that he was experiencing chronic hip and back pain in 2011, and that his right knee "bothered" him at that time. Tr. at 46. Plaintiff indicated that in 2011 he could stand and/or walk for fifteen minutes at a time and was experiencing persistent pain in his back and hip. *Id.* at 47. Continuing, Plaintiff testified that in 2011 he could lift fifty pounds four times per hour from an elevated area. *Id.* at 48. Plaintiff stated that he could sit comfortably for about an hour in 2011. *Id.* at 49. When asked about his depression in 2011, Plaintiff testified that he was attending a university as a full-time student, but he had to drop out for physical reasons. *Id.* at 50. According to Plaintiff, this led to an episode of depression and he checked himself into a hospital. *Id.* The ALJ then asked Plaintiff when he stopped attending the university, and Plaintiff stated that he stopped in the middle of his third year, in either 2010 or 2011. *Id.* at 50-51.

Upon examination by his attorney, Plaintiff testified that he was taking antidepressants in 2011, but the medications did not help his mental state. Tr. at 52. Plaintiff stated that he was not using cocaine and alcohol very often in 2011, and that he would use both in "bouts." *Id.* Continuing, Plaintiff indicated that he would stay sober for "maybe two or three months" and then would start using cocaine and alcohol due to his depression. *Id.* Plaintiff testified that he would check himself into treatment about two weeks after he started using the substances. *Id.*

The ALJ then asked Plaintiff how long he had been sober as of the date of the hearing. Tr. at 57. Plaintiff testified that he had been sober for two months as of the date of the hearing. *Id.* at 58. Continuing, Plaintiff stated that he had a valid driver's license. *Id.* The ALJ asked Plaintiff if his colitis was the result of his alcohol intake and Plaintiff indicated that he still had colitis when he was not abusing alcohol. *Id.* at 59. Next, Plaintiff indicated that he had been doing well in college, was passing all of his classes, and made the dean's list in 2009. *Id.* at 60-61. Plaintiff also stated that in college he helped facilitate student support services and monitor the student computer lab, and that he had tutored other students in anatomy, physiology, English, and writing. *Id.* When asked whether he was having any physical trouble attending campus classes and activities, Plaintiff indicated that he was having trouble carrying a backpack and instead used a rolling bag. *Id.*

Next, the ALJ questioned the VE. Tr. at 63. The ALJ posed a hypothetical individual to the VE of a similar age as Plaintiff, and who had the same education and work experience. *Id.* at 65. The following additional limitations were also included: light level of work; lifting no more than twenty pounds occasionally and ten pounds frequently; the ability to stand and walk at least six hours in an eight-hour workday, and to sit the same amount of time; no work around hazards such as unprotected heights or moving machinery; no climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasionally balancing, stooping, kneeling, and crouching; no crawling; no driving during the course of employment or using foot controls; no concentrated exposure to vibrations; and no work with food or food products. *Id.* at 65-66. The VE indicated that these limitations would preclude the hypothetical individual from Plaintiff's former assistant manager job, but that the individual could perform work as an order clerk, packer, and sorter. *Id.* at 66. When asked about the impact of an additional sit/stand option, the VE testified that the order clerk job would be eliminated, and the number of available packer and sorter jobs would be cut in half. *Id.* at 67. Following the ALJ's examination of the VE, Plaintiff's counsel indicated that there were no questions for the VE and the ALJ concluded the hearing. *Id.* at 69-71.

### III.     RELEVANT PORTIONS OF THE ALJ'S DECISION

After the hearing, the ALJ issued a decision on October 6, 2015. Tr. at 15. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. *Id.* at 20. Continuing, the ALJ indicated that Plaintiff had not engaged in substantial gainful activity since January 22, 2011, the alleged onset date. *Id.* at 21. The ALJ determined that Plaintiff had the following severe impairments: substance abuse with liver disease; Hepatitis C; degenerative disc disease of the lumbar spine; arthritis; depression; and colitis. *Id.* The ALJ found that Plaintiff's impairments, including the substance abuse, met Listing 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1, and that if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and therefore Plaintiff would continue to have a severe impairment or combination of impairments. *Id.* However, the ALJ determined that if Plaintiff

stopped the substance use he would not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 23.

The ALJ then stated that if Plaintiff stopped the substance use he would have the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations: no hazards, including work at unprotected heights or around dangerous machinery; no climbing ladders, ropes, or scaffolds; occasionally climbing or ramps or stairs; occasionally balancing, stooping, kneeling, and crouching; no crawling; no driving in the course of employment or use of foot controls; no concentrated exposure to vibrations; and no work with food or food products. Tr. at 23.

Continuing, the ALJ found that if Plaintiff stopped the substance abuse he would be unable to perform past relevant work. Tr. at 25. The ALJ stated that Plaintiff was of advanced age, had a high school education, and could communicate in English. *Id.* Next, the ALJ indicated that if Plaintiff stopped the substance use, and considering his age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that he could perform. *Id.* Based on the above findings, the ALJ determined that Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability because he would not be disabled if he stopped the substance use. *Id.* at 26. Accordingly, the ALJ found that Plaintiff had not been disabled under the Social Security Act at any time from the alleged onset date through the date of the decision. *Id.*

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

    3.      If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

    4.      If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

    5.      If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## **V.**    **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence

standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citations omitted).

## VI.   LAW AND ANALYSIS

### A.   Substantial Evidence

Plaintiff first asserts that the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly substituted his own judgment for that of a doctor and improperly relied on his own expertise in deciding Plaintiff's physical RFC. ECF Dkt. #15 at 16. Continuing, Plaintiff cites *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp. 2d 908, 911-12 (N.D. Ohio Mar. 31, 2008), for the proposition that the ALJ may not interpret raw medical data in functional terms. *Id.* at 18. Plaintiff avers that it is unclear what evidence the ALJ relied upon when assessing his physical impairments. *Id.* Additionally, Plaintiff cites *McQuin v. Comm'r of Soc. Sec.*, No. 3:12-cv-1704, 2014 WL 1369674, at *14 (N.D. Ohio Mar. 31, 2014), a case in which the Court determined that the ALJ improperly assumed the role of a medical expert by assessing the claimant's mental impairments after the state agency reviewing physicians concluded that there was insufficient evidence in the record to complete an assessment of the claimant's functional limitations. *Id.*

Plaintiff asserts that the ALJ in the instant case did not have the benefit of any opinion from state agency reviewing physicians, and only had the opinion of Mr. Stackpoole, SDM, who concluded that there was insufficient evidence to form an opinion on Plaintiff's physical RFC as of his date last insured, December 31, 2011. ECF Dkt. #15 at 18. Continuing, Plaintiff states that remand is necessary because the ALJ's RFC finding that Plaintiff was capable of performing a reduced range of light work was based on the ALJ's interpretation of the raw medical data in functional terms and not on the medical opinions of record. *Id.* at 19.

Defendant begins by indicating that the ALJ noted that much of the medical evidence of record was created after the expiration of Plaintiff's insured status and/or was related to his

substance abuse issues. ECK Dkt. #18 at 8 (citing Tr. at 24-25). Continuing, Defendant states that the ALJ recognized that the record did not contain medical opinions assessing Plaintiff's RFC, but nonetheless determined that the medical evidence supported a determination that Plaintiff could perform a range of light work on a sustained basis. *Id.* (citing Tr. at 25).

Next, Defendant asserts that *Deskin* is not the proper standard and that the Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinions and determined the claimant's RFC based on objective medical evidence and non-medical evidence.[3] ECF Dkt. #18 at 8 (citing *Ford v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 194 (6th Cir. 2004)). Defendant also states that it is ultimately the responsibility of the ALJ, not a physician, to determine a claimant's RFC. *Id.* at 9.

Plaintiff's arguments are without merit. Regarding *Deskin*, the Court has elaborated on the holding, explaining:

> Properly understood, *Deskin* sets out a narrow rule that does not constitute a bright-line test. It potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence. The ALJ retains discretion to impose work-related limitations without a proper source opinion where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

*Kizys v. Comm'r of Soc. Sec.*, No. 3:10CV25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011) (internal citation omitted). In the instant case, the ALJ explained that much of the medical evidence that was submitted was created after Plaintiff's date last insured and was not relevant to a finding of disability, and that the medical evidence, Plaintiff's activities of daily living, and the history of conservative treatment weigh against a finding of disability. Tr. at 24. A review of the record supports that ALJ's finding as the medical evidence consistently shows

---

[3]The undersigned recognizes that while *Deskin* has not been overruled, its analysis has been called into question by the Court. *See Williams v. Astrue*, No. 1:11-cv-2569, 2012 WL 3586962, at *7 (N.D. Ohio Aug. 20, 2012); *Henderson v. Comm'r of Soc. Sec.*, 1:08CV2080, 2010 WL 750222 (N.D. Ohio Mar. 2, 2010). The validity of *Deskin* need not be decided in the instant case as Plaintiff's arguments fail independently of whether *Deskin* accurately interprets the law since the medical evidence shows relatively little physical impairment and the ALJ relied on substantial evidence in rendering the decision, as stated herein. To give Plaintiff the benefit of the doubt, the undersigned has addressed his arguments based on *Deskin.*

that Plaintiff had fairly minor physical impairments and that his mental impairments were tied to substance abuse.[4]  Under these circumstances, it was appropriate for the ALJ to render a commonsense judgment about Plaintiff's functional capacity.  *See Kizys*, 2011 WL 5024866, at *2.

Plaintiff also asserts that *McQuin* is applicable.  In *McQuin*, the Court found that the ALJ imposed functional limitations after not accepting the opinion offered by the only medical professional and "without any other medical opinion supporting her conclusion." *McQuin*, 2014 WL 1369674, at *14.  In the instant case, the ALJ did not impose an RFC finding contrary to the opinion of a medical source, as no medical source opinion was offered as to Plaintiff's physical RFC.  When discussing Plaintiff's RFC and his RFC if he stopped the substance abuse, the ALJ included citations to evidence supporting the RFC finding, including a discussion of Plaintiff's: substance abuse; activities of daily living; social functioning; concentration, persistence, or pace; hip and back pain; and other medical impairments.  Tr. at 21-25.  The ALJ did not make the RFC finding without providing reasons for the finding, but instead relied on the evidence of record.

Plaintiff carries the burden to provide evidence of disability.  *See Moon*, 923 F.2d at 1181.  In this case, Plaintiff failed to submit medical evidence or opinion evidence establishing that he was disabled.  Plaintiff now faults the ALJ for assessing his RFC after failing to meet his evidentiary burden relating to the period for which he was allegedly disabled, stating:

> It is entirely unclear where these [RFC] limitations came from.  **The 1,506 page transcript contains no medical opinions as to [Plaintiff's] physical functioning.**  Given the existing record, a reviewing court is left to deduce that the ALJ's physical RFC determination was based on his own interpretation of [Plaintiff's] capabilities.

ECF Dkt. #15 at 18 (emphasis in original).  Under this logic, a claimant could file for disability benefits with no opinion evidence supporting their claim(s), and then would be entitled to a medical examination and opinion, and the ALJ would seemingly be forced to adopt the opinion as the RFC finding.  This proposition is not support by Sixth Circuit law or any regulation.

---

[4]*See* Section II, *supra*.

Further, the ALJ cited substantial evidence supporting the RFC finding and the finding that Plaintiff could perform light work, with the limitations included above, if he stopped abusing substances. Accordingly, Plaintiff has failed to meet his burden and the ALJ's decision is based on substantial evidence.

### **B.** **Medical Expert and Consultative Examination**

Plaintiff next asserts that the ALJ should have called a medical expert or ordered a consultative examination given that there were no medical opinions of record. Continuing, Plaintiff claims that "this is one of those rare cases where it was *necessary* to call on a medical expert or order a consultative examination to enable the ALJ to issue a decision supported by substantial evidence." ECF Dkt. #15 at 20-21 (emphasis in original). Plaintiff again cites *Deskin* in support of his position. 605 F.Supp.2d at 912.

Defendant contends that the ALJ was not under any duty to develop the record in this case, asserting that Plaintiff was represented by counsel and that it was his burden to produce evidence establishing his disability. ECF Dkt. #18 at 9. Continuing, Defendant states that a medical examination is required when it "is necessary to enable the administrative law judge to make the disability decision." *Id.* (quoting *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)). Defendant also avers that it was within the ALJ's discretion to decide whether consultation of a medical expert was necessary at the administrative hearing. *Id.* at 10 (citing *Williams v. Astrue*, 1:11-cv-02569, 2012 WL 3586962 (N.D. Ohio Aug. 20, 2012) (internal citation omitted)).

Plaintiff's argument is without merit. The burden to produce evidence establishing disability was on Plaintiff, and Plaintiff failed to meet this burden. *See Moon*, 923 F.2d at 1181. As stated by Defendant, the ALJ has discretion in deciding whether to call a medical expert or order a consultative examination. Here, the ALJ reviewed the record and determined that neither was necessary. There is no requirement that the ALJ call a medical expert or order a consultative examination due to Plaintiff's failure to submit opinion evidence, especially where the medical evidence of record shows limited physical impairments. Accordingly, the ALJ was not obligated to call a medical expert or order a consultative examination in this case.

### **VII.  CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

Date: January 16, 2018  */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).